IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

_____ FILED        ENTERED
_____ LODGED        RECEIVED

DEC 1 1 2008

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____DEPUTY

JAMES A. KODAK,                      )
        Plaintiff,            )
                            )
                            )
v.                                   )      Civil No. WMN-08-cv-2527
                            )
MICHAEL B. MUKASEY, in his official  )
capacity as Attorney General of the United  )
States, and his employees, agents and  )
successors in office,                )
        Defendant.            )
_____  )

### RESPONSE TO MOTION TO DISMISS

      COMES NOW, the Plaintiff, and moves this Court to deny the Defendant's motion to dismiss for lack of subject matter jurisdiction.

### I.  INTRODUCTION

      The Defendant asks for dismissal of the Plaintiff's Complaint asserting lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Defendant argues that since the Second Amendment does not protect the class of ammunition designated as "armor-piercing ammunition" in 18 U.S.C. § 921(a)(17)(B), Plaintiff has suffered no legal injury by being denied access to "armor-piercing ammunition" by 18 U.S.C. §§ 922(a)(7) and (a)(8). As a result, Plaintiff lacks standing to bring this suit. Defendant also argues that Plaintiff's injury is too speculative even if the restriction on sales of "armor-piercing ammunition" was repealed. In addition, Defendant asserts that the United States has not waived its sovereign immunity where there is lack of a legal wrong.

      Defendant's motion must be denied. The argument in support of the motion is derivative of a flawed interpretation of the Complaint, the Second Amendment and the relevant case law.

The federal ban on "armor-piercing ammunition" violates the Second Amendment's protection

of arms for lawful purposes. These purposes include, but are not necessarily limited to,

maintenance of a militia and self-defense.

## II.  LEGAL ANALYSIS

Defendant's arguments are addressed in the order in which they appear in the motion:

**1.      Plaintiff has suffered no actual or imminent injury and speculates on how a repeal of the restriction on the sales of armor-piercing ammunition would affect him.**

Defendant's argument that Plaintiff has suffered no legally recognizable injury is

addressed infra. In addition, Defendant relies on the argument that even if "armor-piercing

ammunition" was protected by the Second Amendment, it is too speculative on how this would

actually affect Plaintiff. Defendant reasons that Plaintiff's injury is nothing more than a "house

of cards," based upon a series of *if* statements. Defendant reaches this conclusion by misreading

the form and structure of the Complaint. Defendant reads the Complaint as ultimately wishing to

avoid a murder prosecution for having fatally shot an assailant. In fact, that possibility is but one

in a list of reasons Plaintiff desires to obtain the banned "armor-piercing" ammunition. Other

reasons in the Complaint include the desire to avoid the unnecessary destruction of human life

and the implicit desire to exercise a constitutionally guaranteed freedom. Defendant mistakenly

takes the most speculative reason and presumes it to be the only reason.

Defendant is also concerned that Plaintiff does not currently own a handgun or has even

stated that he is legally eligible to own one. Perhaps the Defendant would also have Plaintiff

state that he possesses the financial means to purchase a handgun and that he is not currently

laying on his deathbed.  Regardless, for reasons stated infra, Plaintiff is filing an amended

Complaint pursuant to Fed. R. Civ. P. 15(a) and this should address Defendant's concerns.

> **2.  Possession of armor-piercing ammunition is not a legally protected interest under the Second Amendment.**

*A.   Maintenance of a militia*

"…the Second Amendment's prefatory clause announces the purpose for which the right

was codified: to prevent elimination of the militia." Heller v. District of Columbia, 554 U.S. 26

(2008).  Thus, in Heller, the Court recognized that while individual citizens' right to keep and

bear arms may extend beyond the purposes of possible militia service, such as self-defense, it

also embraced both the prefatory clause and the precedent established in Unites States v. Miller,

307 U.S. 174 (1939).  This interpretation of the right logically extends, as even Defendant seems

to concede in his motion, to ammunition and other parts critical to the function of firearms.

Therefore, the constitutional necessity of maintaining an armed militia, which the Court has

defined as "…all males capable of acting in concert for the common defense" Unites States v.

Miller, 307 U.S. 174, 179 (1939), the citizenry must have access to ammunition which is

effective for this role.


Modern militaries and police forces are routinely issued body armor.  It is therefore

reasonable to assume that should a United States militia ever be called upon to combat the

imposition of tyranny, the enemy personnel they face will almost certainly be armored.  It is

difficult imagine how the federal government's prohibition on "armor-piercing ammunition" is

in keeping with the Court's Miller and Heller precedents when it only permits ammunition that is

next to useless for our militia.  Any militia comprised of rational citizens would overwhelmingly

choose ammunition that is most capable of penetrating the armor protecting enemy personnel. The ban on "armor-piercing ammunition," like the District of Columbia handgun ban at issue in Heller, "…amounts to a prohibition of an entire class of "arms" that is overwhelmingly chosen by American society" for a lawful purpose.  Heller, 554 U.S. at 56.  The prohibition at issue here is not a minor tangential knick in the sphere of liberties protected by the Second Amendment.  It strikes at the very core of what the right to keep and bear arms is all about; the necessity to provide for an effective citizens' militia.

Contrary to Defendant's assertion, the class of ammunition described as "armor-piercing" in 18 U.S.C. § 921(a)(17)(B), is not a single type of ammunition in the same way that the short-barreled shotgun at issue in Miller is a particular type of firearm.  The law at issue in Miller restricted merely a particular feature of a particular gun type.  The law at issue here bifurcates handgun ammunition into two general classes and then proceeds to prohibit one of the two. Furthermore, whereas armor-piercing ammunition is critical to the lawful purpose of militia maintenance, the use of a short-barreled shotgun is critical to no lawful purpose.

Specifically, 18 U.S.C. § 921(a)(17)(B), defines "armor-piercing ammunition" alternatively as possessing full jackets weighing in excess of 25% of total projectile weight and larger than .22 caliber or possessing a projectile or projectile core, that, except for trace elements, is made up of certain specified elements and alloys.  These elements, including those identified by reference to alloy, make up a total of 7 of the 94 naturally occurring elements including: tungsten, iron, beryllium, copper, uranium, zinc and tin.  This represents approximately 10% of the naturally occurring metals.  On its own terms, the scope of this prohibition is much larger

than banning just a single metallic element, such as lead. Indeed, compared to iron, which is approximately 3000 times more abundant by weight within the earth's crust, lead is but a trace element.[1] Yet the result of an additional lead ban would be the elimination of almost all currently available ammunition. Perhaps one way to avoid this *reductio ad absurdum* is to draw a distinction between laws based on the extent to which they actually affect the market for ammunition but in the absence of any such guidance from the judiciary thus far, we are left with an analysis of the ban on its own terms and in order to gauge the extent to which liberty is impinged upon we must consider the identification and occurrence of the banned elements.

Nor is the Defendant's argument aided by reference to the <u>Heller</u> Court's dictum that it does not read <u>Miller</u> as protecting a citizen's right to own a machine gun. The <u>Heller</u> court was merely making the observation that militias do not and need not possess the same array of weaponry as standing professional armies. It is the role of the militia to guard against the tyranny of a foreign invader or a domestic oppressor in the local setting where coercion is ultimately enforced. The militia need not possess the means to engage a column of tanks in open range, but it must possess the means to kill the personnel who would enforce tyranny upon the citizenry. It must have access to ammunition effective for this purpose.

B.    *Self-defense*

In addition to the lawful purpose of militia maintenance, <u>Heller</u> protects the possession of arms for self-defense purposes. Although it requires some speculation, it is very likely that there would be a significant demand for "armor-piercing ammunition" for self-defense purposes if it was made available to the public. Furthermore, there is no way to avoid this speculation. When

---

[1] Kenneth Barbalace, *Periodic Table of Elements*, Environmental Chemistry.com, retrieved on 2008-12-09.

the Defendant states that the Plaintiff has the burden of showing that the relevant class of ammunition is typically possessed by law-abiding citizens, I assume it with the understanding that the term "law-abiding" must be read in the narrow sense as meaning citizens not otherwise prohibited from owning firearms. Read in the broadest sense, the plaintiffs in <u>Heller</u> could not have prevailed because the handguns they sought were not legal within the District of Columbia prior to the Court's decision. This broad reading would also constitutionally ensconce any gun restriction currently on the books. Therefore, the relevant question is not what ammunition is actually currently owned by the citizenry, but what ammunition would they typically own in the absence of the ban?

Plaintiff, to date, has been unable obtain any authoritative economic data indicating the market share of handgun ammunition meeting the statutory definition of "armor-piercing" prior to the enactment of the legislation in question. Nevertheless, there is good reason to conclude that ammunition of this sort would be typically used by handgun owners if they had legal access to it. First, the very fact that Congress enacted the ban is a very strong indicator that the presence of this ammunition must have been significant prior to the ban. If "armor-piercing ammunition" was exceedingly rare, then it seems unlikely the Congress would have even debated the topic, much less, go to the lengths of passing a ban.

Furthermore, there is good reason to believe that this market share, whatever it was, would have grown with the passage of time. Scientific study has revealed the relative safety of non-expanding, armor-piercing ammunition as compared to standard ammunition when it makes

contact with unprotected human flesh.[2]  Members of the gun owning public, including Plaintiff,

recognize the benefit of ammunition that can stop an assailant, but minimize the risk of death

both for the assailant and any possible bystander.  Over time, as the benefits of this class of

ammunition gets more generally disseminated, it is reasonable to conclude that the public will

demand more of it.


     **3.      Plaintiff has failed to cite a waiver of the United States' sovereign immunity.**

     5 U.S.C. § 702 states in pertinent part that   "A person suffering legal wrong because of

agency action, or adversely affected or aggrieved by agency action within the meaning of a

relevant statute, is entitled to judicial review thereof."  Therefore, in the instance of a denial of

constitutionally guaranteed liberty, such as we have in this case, the United States has waived its

sovereign immunity.


     Plaintiff erred in both failing to cite this provision in the Complaint and mistakenly citing

42 U.S.C. § 1983.  These errors will be addressed through an amended Complaint filed pursuant

to Fed. R. Civ. P. 15(a).

---

[2] See Sykes LN Jr. et al., *Dum-dums, hollow-points, and devastators: techniques designed to increase wounding potential of bullets*, J Trauma. 1989 May;29(5):703-4.; Bonnath KH et al., *Gunshot wounds-ballistic, physiopathology, surgical treatment*, Tierarztl Prax. 1996, Jun;24(3):304-15.; Padrta JC Jr. et al., *Expanding Handgun Bullets*, Journal of Trauma-Injury Infection & Critical Care. 43(3):516-520, Sept. 1997.; and de Madureira PR et al., *Lead poisoning after gunshot wound*, Sao Paulo Med J. 2000 May 4;118(3):78-80.

## III. CONCLUSION

For the foregoing reason, Plaintiff requests that Defendant's motion be denied.

Respectfully submitted,

James A. Kodak
Plaintiff
2626 Barred Owl Way
Odenton, MD 21113
(443) 831-6838

CERTIFICATE OF SERVICE

This is to certify that on the 10th day of December, 2008, a copy of the foregoing was sent

by first-class mail, postage prepaid, to the following in accordance with Fed. R. Civ. P. 5(a):


Larry D. Adams
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201

_____
James A. Kodak
Plaintiff